UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN BELL, individually and on behalf of others similarly situated, ET AL., | ) ) ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiffs, | ) | |
| | ) | 3:08-CV-2093-G |
| VS. | ) | |
| | ) | **ECF** |
| AMERICAN TRAFFIC SOLUTIONS, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, American Traffic Solutions,

Inc. ("ATS"), to dismiss the complaint of the plaintiffs, Steven Bell, Alexis Monrreal,

and Jacqueline Monrreal (collectively, "the plaintiffs"), for lack of standing and for

failure to state a claim. For the reasons set forth below, ATS's motion to dismiss is

granted.

## I. BACKGROUND

The plaintiffs are three individuals who, in the summer of 2008, each received

separate traffic citations for failing to adhere to traffic control signals. Specifically,

the plaintiffs were separately cited for "running a red light."  Original Complaint

("Complaint") ¶ 9.  The plaintiffs were photographed committing the traffic

violations by a photographic traffic signal enforcement system -- a device more

commonly known as a red-light camera.  *See id.* ¶¶ 9-10, 12.[1]  ATS is a privately

owned corporation that provides photographic traffic signal enforcement systems.

Defendant ATS's Motion to Dismiss and Supporting Brief ("Motion to Dismiss") at

3.  ATS contracted with the cities of Arlington and Irving, Texas, (the cities in which

the plaintiffs' respective traffic violations occurred) to install and administer the red-

light camera systems in those cities.  *Id.*; *see also* Complaint ¶¶ 9, 12.  The plaintiffs

argue that Texas law -- specifically, the Private Security Act[2] ("the Act" or "the PSA")

-- requires ATS to obtain a private investigations license from the state and to

maintain a surety bond before it can lawfully install the red-light cameras on behalf of

Texas municipalities.  Complaint ¶ 12.  The plaintiffs contend that ATS's failure to

obtain the license prior to installing the cameras violates the Act's licensing provisions

and thus constitutes negligence per se.  *Id.* ¶¶ 17-19.  Accordingly, plaintiffs seek to

represent a putative class of individuals who have received traffic violations from

ATS's red-light cameras in Arlington and Irving.  *Id.* ¶¶ 13-16.  The plaintiffs also

---

[1]     The plaintiffs do not assert that they are not guilty of the traffic
violations.

[2]     Private Security Act, Tex. Occ. Code Ann. § 1702.001 *et seq.* (Vernon
2004 & Supp. 2008).

seek injunctive relief and pray for damages in excess of three million dollars. *Id.* ¶¶ 19-22.

ATS brings this motion to dismiss on two principal theories:  (1) that the plaintiffs lack standing to pursue this cause of action, or alternatively, (2) that the plaintiffs have failed to state a claim upon which relief can be granted.  Motion to Dismiss at 7-9.  ATS also attacks the propriety of the plaintiffs' requests for injunctive relief, because the PSA, according to ATS, does not create a private cause of action for which a permanent injunction can issue. *Id.* at 14.

## II. ANALYSIS

### A. Motion to Dismiss for Lack of Standing

Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies."  U.S. Const. Art. III § 2.  Standing -- *i.e.*, the need to show that the plaintiff has a direct, personal stake in the outcome of the suit -- is an "essential and unchanging part" of this case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-231 (1990)) (internal quotation marks omitted);  see also *Sommers Drug Stores Company Employment Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("'Standing, since

it goes to the very power of the court to act, must exist at all stages of the proceeding, and not merely when the action is initiated or during an initial appeal.'") (quoting *Safir v. Dole*, 718 F.2d 475, 481 (D.C. Cir. 1983), *cert. denied*, 476 U.S. 1206 (1984)); *University of South Alabama v. American Tobacco Company*, 168 F.3d 405, 410 (11th Cir. 1999) (noting that "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking"). As the Supreme Court explained in *Lujan*, the "irreducible constitutional minimum of standing" has three elements:

> First, the plaintiff[s] must have suffered an "injury in fact"-- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. at 560 (internal citations and footnote omitted).

Lack of standing is a defect in subject matter jurisdiction.  See *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (citing *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986)); see also *Corrigan*, 883 F.2d at 348 ("standing is essential to the exercise of jurisdiction, and . . . lack of standing can be raised at any time by a

party or by the court.") (citing *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1374 (5th Cir. 1986), *cert. denied*, 481 U.S. 1014 (1987)).

Federal district courts have the unique power to make factual findings which are decisive of subject matter jurisdiction. See *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.) (citing, among other authorities, *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)), *cert. denied*, 454 U.S. 897 (1981). The district court has the power to dismiss for lack of subject matter jurisdiction -- and thus for lack of standing -- on any one of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413; *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997); see also *Haase*, 835 F.2d at 907 (noting that, to the extent the assessment of a plaintiff's standing turns on factual evidence, a court may consider all matters developed in the record at the time of its decision).

ATS asserts that the plaintiffs lack standing because they have not sustained an injury-in-fact and because the traffic citations are not fairly traceable to ATS's failure to obtain a license. Motion to Dismiss at 8. ATS argues that having to pay a civil penalty to redress a traffic violation cannot constitute an injury-in-fact. *Id.* Moreover, ATS contends, even if there were a true injury-in-fact, there is no causal connection between ATS's failure to obtain the license on the one hand, and the

injury to plaintiffs on the other.  *Id.* at 8-9.  The plaintiffs respond that their injuries

flow from their traffic citations and associated traffic fines, which were based "solely

and entirely" upon evidence collected by ATS using its red-light camera system.  Brief

in Support of Plaintiff's Response to ATS's Motion to Dismiss ("Response Brief") at

4.  The plaintiffs argue that such evidence was obtained in contravention of the PSA's

provisions, which require investigations companies to obtain state licenses.  *Id.* at 7,

9-10.

　　　　The plaintiffs bear the burden of showing they possess the requisite standing to

bring this case, and at the pleading stage, "general factual allegations of injury

resulting from the defendant's conduct may suffice, for on a motion to dismiss we

'presum[e] that general allegations embrace those specific facts that are necessary to

support the claim.'"  See *Lujan*, 504 U.S. at 561 (quoting *Lujan v. National Wildlife*

*Federation*, 497 U.S. 871, 889 (1990)).  The plaintiffs allege that they received traffic

citations that were issued as a result of improperly acquired evidence.  Complaint

¶¶ 4, 12; Response Brief at 2.  The plaintiffs do not demonstrate how ATS's

possession of a license would have prevented plaintiffs' traffic tickets, but at this stage

of the case, they need not do so.  See *Lujan*, 504 U.S. at 561.  The plaintiffs assert

that they have paid $75 fines to the cities based upon improperly collected

photographic evidence.  Response Brief at 2.  It is conceivable that plaintiffs have an

interest in not being charged with traffic violations based upon evidence collected in

violation of Texas law.[3]  Taking, as it must, the plaintiffs' factual allegations as true,

and presuming that the plaintiffs' general allegations embrace specific facts necessary

to support their claims, see *Lujan*, 504 U.S. at 561, the court finds that the plaintiffs

have, at this stage of the case, aptly demonstrated that an injury of a legally protected

interest may exist, and as such, have fulfilled the requirements of the first prong of

the standing analysis.

The plaintiffs' allegations also sufficiently demonstrate that their injuries are

fairly traceable to ATS's installation of the red-light cameras without a license.  That

is, the plaintiffs assert that the evidence giving rise to their traffic violations was

illegally obtained since ATS did not comply with the alleged licensing requirements of

the PSA.  Complaint ¶ 12.  Therefore, for purposes of establishing standing at this

stage of the case, the plaintiffs have shown that their alleged injuries are fairly

traceable to ATS's conduct.  Accordingly, the second prong of the standing analysis is

satisfied.  Since a favorable outcome for the plaintiffs could conceivably redress their

injuries, the court finds that the plaintiffs have established the requisite standing to

pursue this claim, and ATS's motion to dismiss plaintiffs' claims for lack of standing

is denied.

---

[3]      Texas law proscribes the use of evidence against a criminal defendant
when such evidence is obtained in violation of any Texas law.  *See* Tex. Code. Crim.
Proc. Ann. art. 38.23(a) (Vernon 2005 & Supp. 2008).

B.  Motion to Dismiss for Failure to State a Claim

The defendants also move to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that the plaintiffs have failed to state a claim upon which relief can be granted.  Motion to Dismiss at 9.  "To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)), *cert. denied*, __ U.S. __, 128 S. Ct. 1230, 170 L. Ed. 2d 63 (2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 127 S. Ct. at 1964-65 (citations, quotations marks, and brackets omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 127 S. Ct. at 1965).  "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Id*. (internal quotation marks omitted) (quoting *Martin K. Eby Construction Company v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)).

1. *The Licensing Requirement*

The plaintiffs assert that ATS, as a provider of the red-light camera system, is required to be licensed under the PSA because ATS is an investigations company within the meaning of the statute.  Complaint ¶ 12.[4]  The plaintiffs further assert that ATS's failure to obtain the license in violation of the PSA's licensing requirements constitutes negligence per se.  *Id.* ¶¶ 17-19.  ATS, on the other hand, contends that the PSA's licensing requirements are inapplicable to ATS, since ATS is acting as a government agent when it administers the red-light camera system on behalf of the cities.  Motion to Dismiss at 11.  ATS also points the court to an opinion of the Texas Private Security Board as support for the proposition that the PSA does not apply to companies like ATS that contract with municipalities to install red-light camera systems.  *Id.* at 12-13.

The Texas Private Security Board (the "Board") is the state agency charged with enforcing the PSA.  *See* Tex. Occ. Code Ann. § 1702.005(a) (Vernon 2004); *see also* § 1702.002(1-b) (Vernon 2004 & Supp. 2008).  The Texas Legislature has delegated to the Board responsibility for licensing investigations companies, and the Board is authorized to regulate all license holders.  *Id.* §§ 1702.004(a)(1), (5).  The

---

[4]        The PSA provides that a person acts as an investigations company if the person "engages in the business of securing, or accepts employment to secure, evidence for use before a court, board, officer, or investigating committee."  Tex. Occ. Code Ann. § 1702.104(a)(2) (Vernon 2004 & Supp. 2008).  Thus, plaintiffs argue, ATS is an investigation company and is subject to the licensing requirements of § 1702.101.

Board has publicly opined that § 1702 does not require those companies that "assist a municipality with the administration of a photographic traffic signal enforcement system to obtain licenses as private investigators." *See* Opinion of the Texas Private Security Bureau ("Board Opinion"), attached as exhibit A to ATS's Appendix to its Motion to Dismiss. This is based on the Board's understanding that photographic traffic systems with which the Board is familiar "are operated and overseen by the municipalities, not by the contractors." *Id.* Importantly, the Board acknowledges that its opinion that contractors who provide red-light cameras do not require licensure under the PSA is based on the Board's "understanding of the most common contractual arrangements and may not be applicable to all such contracts between governmental entities and private vendors." *Id.*

Texas administrative law allows the court to afford deference to the Board's expressed opinion. See *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994) ("Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute."); *see also* Tex. Gov't Code Ann. § 311.023(6) (Vernon 2005 & Supp. 2008) (in construing a statute, a court may consider, among other things, the "administrative construction of the statute"). However, because the court cannot, at this stage, ascertain whether the red-light cameras at issue are operated and overseen by the cities rather than ATS, the court

cannot determine whether the system fits within the common contractual arrangements upon which the Board's opinion is based, or whether, alternatively, ATS's contractual arrangements with the cities are instead of the type that would bring them within the Board's stated exception. *See* Board Opinion (noting that there may be types of red-light camera contracting arrangements to which the Board's opinion would not apply). It may well be that ATS's red-light camera system is precisely the kind of system that the Board believes is not subject to the Act's licensing requirements. At the pleading stage, however, the court simply cannot make that determination on the scant record *sub judice*. Thus, the court cannot dismiss plaintiffs' claims purely upon the basis that ATS is not required to obtain a PSA license.

### 2. *Negligence Per Se*

Because the court cannot, at this stage, determine whether ATS is required by the PSA to be licensed, the court will evaluate the plaintiffs' negligence per se claims to determine whether those claims pass Rule 12(b)(6) muster. The negligence per se tort concept allows a civil court to adopt a legislatively imposed standard of conduct as the standard of a reasonably prudent person. See *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979). "When a statute criminalizes conduct that is also governed by a common law duty, as in the case of a traffic regulation, applying negligence per se causes no great change in the law because violating the

statutory standard of conduct would usually also be negligence under a common law reasonableness standard."[5]   *Perry v. S.N.*, 973 S.W.2d 301, 306 (Tex. 1998) (citations omitted).  "But recognizing a new, purely statutory duty can have an extreme effect upon the common law of negligence when it allows a cause of action where the common law would not."  *Id.* (citations and internal quotations omitted). "The threshold questions in a negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent."  *Osti v. Saylors*, 991 S.W.2d 322, 327 (Tex. App.--Houston [1st Dist.] 1999, pet. denied) (citations omitted).

The PSA prohibits a person from engaging "in the business of securing, or accepting employment to secure, evidence for use before a court, board, officer, or investigating committee" without first obtaining a license to do so.  Tex. Occ. Code. Ann. §§ 1702.101, 1702.104 (Vernon 2004 & Supp. 2008).  Because the court cannot, at this stage of the case, determine whether the PSA's licensing requirements apply to ATS (or other companies like it), ATS's motion to dismiss will turn on whether violation of those licensing provisions can serve as an appropriate basis for a claim of negligence per se.

---

[5]        The PSA provides that a failure to obtain a required license under the Act is a Class A misdemeanor.  Tex. Occ. Code Ann. § 1702.388(b) (Vernon 2004 & Supp. 2008).

ATS asserts that the PSA was not meant to "prevent people from receiving traffic citations," and thus concludes that the plaintiffs have not experienced the kind of harm that licensing requirements found in § 1702 were intended to prevent. Motion to Dismiss at 24-25. ATS, though, misapplies the threshold questions articulated in *Osti* and recognized by the Texas Supreme Court in *Perry*. While the intent of the Texas Legislature in enacting the PSA may well not have been to prevent traffic ordinance violators from receiving traffic citations, the legislature may have been concerned with preventing those with criminal records or those who are not otherwise licensed under the PSA from accumulating evidence to use against those accused of violating traffic (or other) laws.[6] Thus, at least arguably, the plaintiffs may be within the class of persons § 1702 was meant to protect, and the plaintiffs may have therefore suffered the kind of injury that the PSA's licensing requirement was intended to prevent. Even so, the court concludes that § 1702 does not establish a standard of civil liability from which a negligence per se cause of action can arise.

---

[6]     The licensing provisions contained within the PSA reveal the Texas Legislature's primary aim in enacting the licensing requirements was to prevent those with a criminal background from influencing the criminal investigations process. For example, § 1702.113 requires that an applicant for a private investigations license must not (1) have been convicted of two or more felony offenses; (2) have been convicted of a single felony offense within the past twenty years or a Class A misdemeanor within the past ten years; or, (3) have been charged, at the time of application, with the commission of a Class A misdemeanor or felony offense. Tex. Occ. Code Ann. § 1702.113 (Vernon 2004 & Supp. 2008).

In *Perry v. S.N.*, the Texas Supreme Court outlined several factors to be considered in determining whether it is appropriate to impose tort liability for violations of a particular statute.  973 S.W.2d at 307-09.  Among the *Perry* factors are the following:

> (1) whether the statute is the sole source of any tort duty from the defendant to the plaintiff or merely supplies a standard of conduct for an existing common law duty; (2) whether the statute puts the public on notice by clearly defining the required conduct; (3) whether the statute would impose liability without fault; (4) whether negligence per se would result in ruinous damages disproportionate to the seriousness of the statutory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; and (5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute.

*Id.* at 309.

> These factors are not necessarily exclusive, nor is the issue properly resolved by merely counting how many factors lean each way.  Rather, we set out these considerations as guides to assist a court in answering the ultimate question of whether imposing tort liability for violations of a criminal statute is fair, workable, and wise.

*Id.* at 306.  Accordingly, the court will consider the *Perry* factors in turn.

The first factor centers on whether the statute at issue is the sole source of any tort duty owed by the defendant to the plaintiff or whether the statute instead "merely supplies a standard of conduct for an existing common law duty[.]"  *Id.* at 309.  As noted in *Perry*, in most cases where a negligence per se cause of action will be

found to apply, the defendant already owed the plaintiff a preexisting common law duty, and the "statute's role is merely to define more precisely what conduct breaches that duty." *Id.* at 306.  ATS asserts, and the court agrees, that there is no preexisting common law duty that would require ATS to obtain a private investigations license before it installed red-light cameras for municipalities.  Attaching a negligence per se claim to the licensing requirements of the PSA, then, would doubtless "have an extreme effect upon the common law of negligence [because] it allows a cause of action where the common law does not." *Id.* (internal quotations omitted).  This factor thus weighs against allowing the plaintiffs' negligence per se claim.

The fourth *Perry* factor requires the court to consider whether permitting the plaintiffs' negligence per se claim would impose ruinous damages disproportionate to the seriousness of the statutory violation.  *See id.* at 308.  The plaintiffs seek a three-million dollar damage award based upon ATS's failure to obtain a $350 license.  *See* Tex. Occ. Code Ann. § 1702.062(a) (Vernon 2004 & Supp. 2008).  Notwithstanding the court's hesitation that the licensing requirement of § 1702.101 (*see* Section II.B.1, *supra*) even applies to ATS, there can be no question that the damages sought by the plaintiffs are grossly disproportionate to the seriousness of violating the Act's licensing requirement.  Thus, this marked disproportionality likewise counsels against the imputation of a negligence per se claim in connection with a failure to obtain a private investigations license.

The fifth *Perry* factor centers on whether the plaintiffs' injuries result directly or indirectly from the violation of the statute. *Perry*, 973 S.W.2d at 308. Here, the plaintiffs' injuries -- receiving traffic citations for disobeying traffic laws -- are only indirectly related to ATS's alleged violation of the licensing statute. That is, whether or not ATS was properly licensed under § 1702.101 has little, if any, bearing on the plaintiffs' compliance with the traffic laws. Although, as noted in section II.A above, Texas law affords criminal defendants the right to exclude improperly obtained evidence against them, ATS's failure to obtain a private investigations license -- if one is even required -- cannot be said to be the direct cause of the plaintiffs' traffic violations. Although ATS's collection of the photographic evidence without a license may have played a part in the ultimate issuance of traffic citations to the plaintiffs, the causal connection is indirect at best, and thus this factor also counsels against attaching a negligence per se cause of action to the PSA's licensing requirement.

The second and third *Perry* factors, which concern whether the statute puts the public on notice by clearly defining the required conduct, and whether the statute would impose liability without fault, are less relevant to the case at hand. *See* 973 S.W.2d at 309. Consequently, these two factors do not add much in the way of illumination in the instant case. In light of the persuasive force of the other three factors, the court finds that, on balance, the *Perry* analysis weighs against an application of negligence per se to the PSA's licensing requirement.

Beyond *Perry*, other considerations likewise counsel against a negligence per se application in this case.  For example, courts will also consider legislative intent in determining whether violation of a penal statute gives rise to a concomitant civil cause of action.  *Reeder v. Daniel*, 61 S.W.3d 359, 362 (Tex. 2001) (noting that legislative intent bears on the negligence per se analysis); see also *Smith v. Merritt*, 940 S.W.2d 602, 607-08 (Tex. 1997) (noting same).  The PSA already provides a comprehensive remedial scheme for violations of the Act's provisions.  For example, the PSA requires those who violate the licensing provisions of § 1702.101 (including those who contract with a person who is required to hold a license) to pay to the *state* a civil penalty of up to $10,000 per violation.  Tex. Occ. Code Ann. § 1702.381(a), (b) (Vernon 2004 & Supp. 2008).  Moreover, the PSA requires specifically that "an attorney for the department, the attorney general's office, or any criminal prosecutor in [Texas]" are the only persons authorized to bring a civil suit in the event one of the Act's provisions is violated.  *Id.* § 1702.383.  The Act itself also includes a detailed complaint-filing scheme that allows consumers and security service recipients to file written complaints, which the Board will then investigate and adjudicate.  *Id.* at §§ 1702.082-084.  Because the PSA provides this elaborate consumer complaint scheme, and because the Act also provides that only government lawyers can bring civil actions for violations of the Act's provisions, the court is persuaded that the Texas Legislature did not intend for individuals to redress alleged violations of the

PSA through private suit.  Accordingly, an examination of legislative intent likewise counsels against allowing a negligence per se claim to attach to a violation of the PSA's licensing requirements.

The plaintiffs point the court to *Missouri Pacific Railroad Company v. American Statesman*, 552 S.W.2d 99 (Tex. 1977), in support of their argument that a negligence per se cause of action should attach to a violation of the PSA's licensing requirements.  Complaint ¶ 18.  In that case, a newspaper publishing company sued a railroad company for damages resulting from a railroad car's collision with the publishing company's steel scaffolding.  *Missouri Pacific Railroad*, 552 S.W.2d at 101. The publishing company built the scaffolding with less clearance from the railroad track than was required by law.  *Id.*  The Texas Supreme Court found that violation of the statute that contained the track clearance requirements constituted negligence per se, and the publishing company was consequently contributorily negligent for the railroad car's collision with the publisher's scaffolding.  *Id.* at 103.  Texas Supreme Court jurisprudence since *Missouri Pacific Railroad*, however, has further illuminated and refined the negligence per se doctrine.  See *Perry*, 973 S.W.2d at 304 (noting that the court will not apply the doctrine of negligence per se if the statute at issue does not provide "an appropriate basis for civil liability").  The court in *Perry* was careful to note that whether a violation of a legislative enactment or regulation is adopted into tort law is a matter of judicial discretion.  *Id.* at 304 n.4 (citing *Southern Pacific*

*Company v. Castro*, 493 S.W.2d 491, 497 (Tex. 1973), and Restatement (Second) of

Torts § 288B (1965)).  Thus, it is the view of this court that *Missouri Pacific*, standing

on its own, is not controlling in this case.

Finally, the court notes that even if a negligence per se cause of action were

found to attach to a violation of § 1702.101, the plaintiffs' claims would nonetheless

fail as a result of the Texas economic loss rule.  See *Jim Walter Homes, Inc. v. Reed*, 711

S.W.2d 617, 618 (Tex. 1986).  This rule provides that "to be entitled to damages for

negligence, a party must plead and prove something more than mere economic harm."

*Blanche v. First Nationwide Mortgage Corporation*, 74 S.W.3d 444, 453 (Tex. App.--

Dallas 2002, no pet.).  More specifically, "a party must plead and prove either a

personal injury or property damage as contrasted to mere economic harm."  *Express

One International, Inc. v. Steinbeck*, 53 S.W.3d 895, 899 (Tex. App.--Dallas 2001, no

pet.).  Here, the plaintiffs have not alleged any personal injury or property damages.

The plaintiffs allege only economic damages consisting of individual $75 fines

assessed against them for running red lights, attorneys' fees for prosecuting the suit,

and punitive damages.  *See* Complaint ¶ 19.  Because plaintiffs allege only economic

damages for their negligence claims, those claims would be dismissed under the Texas

economic loss rule even if such claims were viable.

On the whole, the court finds that, in the instant case, the application of a

negligence per se cause of action to the PSA's licensing requirements would be

inconsistent with both Texas negligence per se jurisprudence and the Texas Legislature's apparent intent in enacting the statute. Because it would be inappropriate to impose tort liability for a violation of § 1702.101, the court finds that the plaintiffs have not stated a claim upon which relief can be granted, and thus plaintiffs' negligence per se claims are dismissed.

## C. Injunctive Relief

The plaintiffs urge the court to impose a permanent injunction prohibiting ATS from acting as a private investigative agency without the appropriate license. Complaint ¶¶ 20-22. ATS argues that the PSA does not permit a private cause of action for injunctive relief. Motion to Dismiss at 14-16. The court agrees.

The PSA provides injunctive relief for violations of its provisions. Tex. Occ. Code Ann. § 1702.382 (Vernon 2004 & Supp. 2008). This provision, however, expressly limits the class of individuals who can bring an action for an injunction to the following: "[a]n attorney for the department, the attorney general's office, or any criminal prosecutor in this state." *Id.* Thus, the injunctive relief plaintiffs seek for alleged violations of the Act is unavailable to them, and the court therefore finds that the PSA does not create a private cause of action for injunctive relief in this regard.

The plaintiffs are not without recourse, however. They have at their disposal the administrative remedies provided by the very statute on which they rely in making their claim against ATS, *i.e.*, the complaint scheme provided by §§ 1702.082-

084.  Under this scheme, the plaintiffs are free to make a complaint to the Board, and

the Board will then undertake an investigation and adjudicate the complaint. *See id.* §

1702.082 (Vernon 2004).  Because the plaintiffs have failed to establish that the PSA

provides a private cause of action for injunctive relief, this claim must also be

dismissed.

### III.  CONCLUSION

For the reasons discussed herein, ATS's motion to dismiss the plaintiffs' claims

pursuant to FED. R. CIV. P. 12(b)(6) is **GRANTED**.

**SO ORDERED**.

June 18, 2009.

A. JOE FISH
**Senior United States District Judge**

- 21 -